ROBERTSON, Presiding Judge.
This action originated when A.L.C., suing by and through her mother, V.L.H., filed a paternity action against J.C.S., alleging that he was the minor child’s father. The mother was only sixteen years old and unmarried when the child was conceived and was unmarried when the child was born. Consequently, the child does not have a presumed father pursuant to § 26-17-5, Code 1975.
The mother testified in a deposition prior to trial that she had engaged in sexual intercourse with a young boy, C.B., before meeting J.C.S., but that relationship had ended several months before she became pregnant. J.C.S. moved to have this man, who still lived in Madison County, made a party defendant to the action. The trial court denied this motion.
Following a jury trial, J.C.S. was determined to be the child’s father. J.C.S. then moved for a new trial, and his request was denied by the trial court. He now appeals.
The two issues raised by J.C.S. are that the trial court erred when it failed to add an additional defendant to the paternity action and, further, that it erred when it allowed into evidence the results of the parties’ blood tests.
First, we must resolve whether the trial court was required to add as an additional defendant another man with whom the mother had previously had sexual intercourse. J.C.S. argues that § 26-17-13(c), Code 1975, mandates that C.B. be named as a defendant in the action. That section provides:
“In an action against an alleged father, evidence offered by the alleged father with respect to another man ... concerning his sexual intercourse with the mother at or about the probable time of conception of the child ... and [who] is subject to the jurisdiction of the court shall be made a defendant in the action.”
The testimony of the mother in this case was that C.B. had moved to Florida in early March prior to the conception of the child and that, consequently, she had terminated her relationship with him, which excluded him as a potential father.
The mother also testified how she remembered the date when the child was conceived. She had gone to a Saturday night square dance with an older friend where she met and danced with J.C.S. They left the dance, rode around Huntsville, drank some beer, and then went to a motel where they spent the night. They engaged in sexual intercourse that night *588 and also the next morning. She was afraid to go home and was afraid J.C.S. was going to be in trouble because of their respective ages; consequently, when they left the motel Sunday morning, J.C.S. took her directly to her very first job as a lifeguard at the YMCA. The date she began her first job was that Sunday, June 6, 1976, and it was also the opening day for the YMCA pool. A.L.C. was born February 28, 1977, some eight months and twenty-three days after that Saturday night.
The mother further testified that approximately two months later, when she knew for sure she was pregnant, she went to J.C.S. and told him she was pregnant. Upon being told, J.C.S. responded that “we will have it.”
No evidence was offered to indicate that the mother had sexual intercourse with anyone other than J.C.S. “at or about the probable time of the conception of the child.” Therefore, we cannot find that the trial court erred in not making C.B. a defendant in this paternity action. The pertinent statutory language is that for the other man to be named as a defendant, evidence must be offered concerning his sexual intercourse with the mother “at or about the probable time of the conception of the child”. § 26-17-13(c), Code 1975.
Next, we examine whether the blood tests of the mother, J.C.S., and the child were properly admitted into evidence. J.C.S. asserts that a proper chain of custody over the blood samples was not established and, thus, that the results of the blood tests were improperly admitted into evidence. Those results established a 99.96% probability that J.C.S. was the father of the minor child. However, medical testimony increased this probability to 99.99% because of J.C.S.’s Native American ancestry.
The blood samples of the parties were drawn by a registered nurse. She verified that each test tube of blood was that of the mother, J.C.S., and the child as she drew each one’s blood. Her testimony was that she put the test tubes and their accompanying paperwork into a styrofoam box and then that she placed tamper proof seals on the box before sealing it in a plastic bag. The bag was then picked up by a courier of the medical laboratories that eventually tested the blood. The blood samples were then received by the lab without evidence of tampering and were tested. The person who tested the blood verified that the blood was properly received and tested.
The record testimony clearly reflects a proper chain of identification from the time the blood samples were taken to the time of analysis and a proper chain of identification from the time the blood samples were analyzed to the time of admission into evidence.
Finding no error, the judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.